# In the United States Court of Federal Claims

**Nos. 18-21C, 18-796C**
**(Filed: August 30, 2019)**
**(Not for publication)**

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
ROBERT E. MILTON, JR. et al.,                   *
                                                *
              Plaintiffs,                       *
                                                *
      v.                                        *
                                                *
THE UNITED STATES,                              *
                                                *
              Defendant.                        *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER OF DISMISSAL

**WILLIAMS**, Senior Judge.

In this action, Plaintiffs pro se claim that the Department of Veterans Affairs breached written, implied, and oral contracts, and the implied duty of good faith and fair dealing by delaying terminating a contract awarded to REM Engineering Company ("REM") and forcing Plaintiffs to maintain bonding for an extended period of time.[1]  This matter comes before the Court on Defendant's motion to dismiss for lack of subject-matter jurisdiction.  Defendant contends that Plaintiffs lack privity of contract with the United States and that Plaintiffs' claims sound in tort. In addition, Defendant argues that Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief may be granted, as Plaintiffs did not plausibly plead the elements of an implied-in-fact contract.  For the reasons stated below, Defendant's motion to dismiss is granted.

## Background[2]

Plaintiffs pro se Robert E. Milton, Jr. and Manuella F. Milton founded REM, a Service-Disabled Veteran-Owned Small Business ("SDVOSB") that performs professional engineering and construction services for industrial, commercial, and government projects.  Am. Compl. ¶ 1.

---

[1]     In their response to Defendant's motion to dismiss, Plaintiffs appear to have abandoned their claims of breach of oral contract and breach of the implied duty of good faith and fair dealing.

[2]     This background is derived from Plaintiffs' amended complaint and Plaintiffs' exhibits.

The Miltons are the sole owners of REM. Id. Mr. Milton is the CEO, and Ms. Milton is the Corporate Secretary and CFO of REM.

On October 4, 2011, the Department of Veterans Affairs ("VA") awarded Contract Number 101CFM-C-0167, the Las Vegas Photovoltaic Solar Project, to REM. Id. at ¶ 2. This contract was an SDVOSB set-aside project valued at $23,347,412, which required performance and payment bonds to be furnished in the amount of the contract's value. Id. at ¶¶ 2-3. Mr. and Mrs. Milton signed these bonds on REM's behalf, in their capacities as President and Secretary of REM. Pls.' Exs. Tab B. After executing these bonds, REM had exhausted its bonding capacity. Plaintiffs allege that they were required to personally indemnify both the surety and the VA under an indemnity agreement, and pledged their personal assets to secure the bond. Am. Compl. ¶ 4. One of REM's sureties, Liberty Mutual, required a general indemnity agreement, which was signed by REM as well as Plaintiffs, both individually and on behalf of the Milton Family Trust. Pls.' Suppl. Exs. Tab 1.

The Notice to Proceed on the Contract was delayed due to the filing of a number of protests. On August 22, 2012, the Government Accountability Office ("GAO") sustained one of the protests and recommended that the VA reevaluate proposals, perform a new price/technical tradeoff analysis, and terminate the contract for convenience if REM was not determined to be the best value upon reevaluation. Am. Compl. ¶ 12.

On July 10, 2013, the VA issued a notice terminating REM's Contract for convenience. Because it had been over a year since the issuance of the solicitation, the VA "had significant concerns that the technology and pricing for Photovoltaic Systems had changed" and assessed its options in light of changing circumstances on-site. Pls.' Suppl. Exs. Tab 9. REM did not perform any work under the Contract as no Notice to Proceed was ever issued. Id. at Tab 6. Plaintiffs allege that the VA's failure to implement GAO's recommendations and nearly year-long delay in deciding to either issue the Notice to Proceed or terminate the contract for convenience caused them to suffer financial hardship due to REM's inability to take on any other projects. Am. Compl. ¶¶ 14, 16.

Plaintiffs further allege that from the date of GAO's decision, August 22, 2012, to the date of the eventual termination for convenience of the Contract on July 10, 2013, the VA continued to assure Plaintiffs that REM's Contract would proceed and refused to release REM and Plaintiffs from their bonding obligations. Plaintiffs allege that from March 2013 through June 3, 2013, the VA represented that it would find other projects for REM. According to Plaintiffs, the VA promised them a "three-step recovery plan" for REM, which included monetary recovery, architect and engineering projects, facilities' condition assessments, and sole source construction opportunities under the Veterans First Contracting Program. Id. at ¶¶ 31-32.

On July 10, 2013, REM received notice of termination of the contract. Pls.' Suppl. Exs. Tab 2. REM submitted a settlement proposal on July 31, 2013 seeking $422,026 in direct costs, $250,458 in indirect costs, $2,300,00 in project profits and $562,500 in potential project profits for a total settlement proposal amount of $3,534,983. Pls.' Suppl. Exs. Tab 4. In an attempt to assist Plaintiffs in settling outstanding debts related to REM, the Contracting Officer made four advanced partial termination settlement payments to REM: $75,000 on September 26, 2013,

$20,000 on October 25, 2013, $100,000 on December 5, 2013, and $150,000 on February 3, 2014. Pls.' Suppl. Exs. Tab 9.

On January 31, 2014, the VA issued a final decision denying REM's claim for termination settlement damages, and issued a contract modification reflecting a final settlement amount of $39,303.28, advising REM that the VA considered the settlement issue closed. Pls.' Suppl. Exs. Tab 5. On March 21, 2014, REM filed an appeal of this final decision with the Civilian Board of Contract Appeals.

On May 6, 2014, REM, through counsel, filed a request for final decision from the VA on another claim that the VA's failure to timely issue the termination for convenience entitled REM to damages of $5,199,938.09 incurred during the delay period. The VA denied this claim on July 9, 2014. Pls.' Suppl. Exs. Tab 9. Plaintiffs timely appealed this decision to the Civilian Board of Contract Appeals. In this appeal, REM alleged that it "incurred substantial damages because the contracting officer . . . with knowledge that the VA would not proceed with the contract and with knowledge that the REM's bonding capacity was totally committed to the contract, intentionally or negligently waited approximately 11 months to issue" the termination for convenience. Id. at Tab 10. REM continued that it was "unable to secure qualifying replacement work because its bonding was used on the contract," and that the VA should have issued a termination earlier. Id.

On September 18, 2015, REM accepted a settlement offer of $3,050,000, in full and complete settlement of both its appeals before the Civilian Board of Contract Appeals - - CBCA Nos. 3786, and 3977. Pls.' Suppl. Exs. Tab 15.

Plaintiffs filed suit in this Court on January 2, 2018, and amended their complaint on July 23, 2018. In their amended complaint, Plaintiffs raised four claims: 1) breach of written contract, 2) breach of implied contract, 3) breach of oral contract, and 4) breach of the implied duty of good faith and fair dealing. On August 2, 2018, Defendant filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that Plaintiffs failed to allege a contract between the United States and Plaintiffs as individuals and were attempting to recover on a claim that was encompassed in REM's 2015 settlement with VA. Defendant also sought dismissal of Plaintiffs' implied contract claim, under Rule 12(b)(6).

## Discussion

The plaintiff has the burden of establishing subject-matter jurisdiction in this Court. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The Court must dismiss the action if it finds subject-matter jurisdiction to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to the plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

The filings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers.'" Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs still bear the burden of establishing

the Court's jurisdiction and must do so by a preponderance of the evidence. See Reynolds, 846 F.2d at 748; Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act provides that this Court:

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012).

## Plaintiffs Lack Privity of Contract and Third-Party Beneficiary Status

Defendant seeks dismissal of Plaintiffs' breach of contract claim because Plaintiffs lack privity of contract with the VA and are not third-party beneficiaries of REM's contract with the VA. REM, not the Miltons as individuals, was the party to the Contract with the VA. In order to bring a cause of action based on contract pursuant to the Tucker Act, there must be a contract between a plaintiff and the Government. Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998). Privity between the Government and a plaintiff is a jurisdictional requirement, because the United States only consents to suit "by those with whom it has privity of contract" and only waives its sovereign immunity where privity exists. Cent. Transp. Int'l, LLC v. United States, 63 Fed. Cl. 336, 338 (2004), aff'd 161 F. App'x 952 (2006); Globex Corp. v. United States, 54 Fed. Cl. 343, 347 (2002) (internal citation and quotation marks omitted).

In the absence of privity, a nonparty may establish third-party beneficiary status as follows:

> A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend. This intent may be either express or implied, and it must be fairly attributable to the contracting officer. In addition, the benefit to the third party must be direct. The Supreme Court has recognized the exceptional privilege that third-party beneficiary status imparts, and we have accordingly cautioned that the privilege of third party beneficiary status should not be granted liberally.

> \*         \*         \*

> In the absence of clear guidance from the contract language, the requisite intent on the part of the government can be inferred from the actions of the contracting officer and circumstances providing the contracting officer with appropriate notice that the contract provision at issues was intended to benefit a third party.

G4S Tech. LLC v. United States, 779 F.3d 1337, 1340 (Fed. Cir. 2015) (omission in original) (internal citations and quotation marks omitted). Third-party beneficiary status is "an exceptional privilege," and a party must show that it was an intended beneficiary of an agreement to qualify as a third-party beneficiary. Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003).

Plaintiffs allege the VA was the third-party beneficiary of the indemnity agreement and that "the VA breached obligations of a third party beneficiary when it wrongfully refused to terminate the contract." Pls.' Resp. 5. Plaintiffs do not articulate how the VA's status as a third-party beneficiary would give Plaintiffs any rights. Plaintiffs have not alleged or demonstrated that they were third-party beneficiaries of REM's Contract with the VA. As such, Plaintiffs' breach of contract claim based upon their third-party beneficiary theory is dismissed.

**Plaintiffs Cannot Raise A Breach of Contract Claim Against the Government Based Upon Equitable Subrogation**

Plaintiffs allege they have rights of equitable subrogation arising from their guaranty of REM's obligations to Liberty Mutual, one of REM's sureties, under an indemnity agreement between REM, Plaintiffs, and Liberty Mutual. "[U]nder the doctrine of equitable subrogation, the surety 'step[s] into the shoes of [the] government contractor' and may bring suit under the Tucker Act based on the contractor's privity with the United States under the construction contract." Lumbermens Mut. Cas. Co. v. United States, 654 F.3d 1305, 1312 (Fed. Cir. 2011) (quoting Ins. Co. of the W. v. United States, 243 F.3d 1367, 1369, 1374-75 (Fed. Cir. 2001)) (alterations in original). This theory "is based on the view that the triggering of a surety's bond obligation gives rise to an implied assignment of rights by operation of law whereby the surety 'is subrogated to the [principal obligor's] property rights in the contract balance.'" Id. (quoting Balboa Ins. Co. v. United States, 775, F.2d 1158, 1161 (Fed. Cir. 1985)) (alterations in original). In this action, Plaintiffs claim that, during the period while the VA delayed commencing or terminating REM's contract, the VA insisted that the surety and personal obligors continue to insure the government, thus causing Plaintiffs' damages. However, Plaintiffs were not sureties, and they have not alleged that the surety's bond obligation was triggered here - - instead Plaintiffs allege that they were required to maintain the bonds for an excessive period of time. As such, the equitable subrogation doctrine is not a basis for this Court to exercise jurisdiction over Plaintiffs' claims against the VA.

**Plaintiffs Failed to State a Claim for Breach of an Implied-in-Fact Contract**

Plaintiffs allege a breach of an implied-in-fact contract due to the VA's failure to terminate REM's bonding requirement once the VA was aware that there would be no performance of the Contract. Am. Compl. ¶¶ 48-51. Plaintiffs allege that from the time the Contract was awarded on October 4, 2011, to the termination for convenience on July 10, 2013, Plaintiffs alerted the VA numerous times that the requirement to keep the bonds in place had economic consequences for both REM and Plaintiffs themselves, and that the VA would find REM in default if the bonds were pulled. Am. Compl. ¶ 9. Plaintiffs argue that this "threat" to deem REM to be in default if the bonds were released constituted "a meeting of the minds," that the "forbearance by R.E.M. and the personal guarantors was additional consideration," and that the "contract clearly was based upon the representations and course of conduct of the parties." Pls.' Resp. 6.

An implied-in-fact contract requires a showing of the same elements of formation as an express contract - - "a mutual intent to contract including an offer, an acceptance, and consideration," and, for a contract with the United States, actual authority of the Government representative who entered into the contract to bind the United States. Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997). An implied-in-fact contract also requires a

foundation "upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (internal citation and quotation marks omitted).

Plaintiffs have failed to allege an unambiguous offer to contract upon specific terms, an unambiguous acceptance of that offer, consideration, or actual authority of an appropriate Government representative. See O. Ahlborg & Sons, Inc. v. United States, 74 Fed. Cl. 178, 191 (2006). Plaintiffs have failed to allege conduct on the part of the VA that gives rise to a plausible allegation that the VA intended to contract with Plaintiffs. Therefore, Plaintiffs' claim for breach of implied-in-fact contract is dismissed for failure to state a claim upon which relief can be granted. To the extent Plaintiffs are claiming a breach of an implied-in-law contract, this Court lacks jurisdiction.

**Plaintiffs' Action is Barred Under Principles of Claim Preclusion**

In their complaint, Plaintiffs seek to raise the same claim that REM, the company they own, raised before the Civilian Board of Contract Appeals: that the VA's nearly year-long delay in issuing the termination for convenience caused Plaintiffs to personally incur damages of $5,199,938.09.[3]

Defendant argues that "the plaintiffs are back for a second bite at the apple. In short, the plaintiffs seek to recover damages allegedly suffered by REM, but not recovered by REM through the settlement of the board case." Mot. to Dismiss 2. Defendant further argues that "REM has no remaining contractual rights for the surety (or anyone else) to assert. The Miltons have made a binding judicial admission that REM settled its claims against the United States." Reply 5 (internal citation omitted) (emphasis in original). The record establishes that REM accepted $3,050,000 in full and complete settlement of both this termination delay claim and its termination settlement claim.

Because REM raised the same claim before the Civilian Board of Contract Appeals, and resolved that claim via a stipulation of settlement, Plaintiffs may not relitigate this claim in the instant case.[4] See Ford-Clifton v. Dep't of Veterans Affairs, 661 F.3d 655, 660 (Fed. Cir. 2011) ("It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final

---

[3]   REM made this same argument to the Civilian Board of Contract Appeals, alleging that it was required to maintain its bonds or risk not being ready to perform once the VA issued a notice to proceed. Pls.' Suppl. Exs. Tab 12. That claim was settled on September 18, 2015, and the VA paid REM $3,050,000. Pls.' Suppl. Exs. Tab 15. The stipulation of settlement provided "[t]his settlement represents a complete and equitable adjustment to the above Appeals and a full and final settlement of [REM]'s claim and [the VA]'s defenses in the above Appeals" before the Civilian Board of Contract Appeals. Id.

[4]   In the stipulation of settlement, the parties agreed that "further litigation of these appeals would not be in the best interest of either party", moved to dismiss the appeal "with prejudice", and stated that they "will not seek reconsideration of or relief from, the [Civilian Board of Contract Appeal's] decision, and they will not appeal the decision." Pls.' Suppl. Exs. Tab 15.

judgment on the merits in a res judicata analysis."); see also Hallco Mfg. Co. v. Foster, 256 F.3d 1290, 1294–95 (Fed. Cir. 2001) ("A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action.").

## Conclusion

Defendant's motion to dismiss is **GRANTED**.  The Clerk is directed to dismiss this action.

**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**